UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON ZIMMERMAN,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>Defendants. | Case No.  25-cv-10164-VC<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 28 |

The plaintiff in this case, Jason Zimmerman, enrolled in AutoPay to pay off a car loan. He alleges that when he reached his very last payment, the lender failed to process it, even though his AutoPay was turned on and the money was available in his bank account. The payment later showed up as overdue on his credit reports, which Zimmerman says is an inaccuracy under the Fair Credit Reporting Act.

The defendants here—credit reporting agencies Equifax, Experian, and Transunion— argue that Zimmerman's final payment was accurately reported as overdue. As they see it, it is factually correct that Zimmerman's payment was late, and any dispute he has with the reporting boils down to a dispute over whose fault it was that he didn't pay on time. The defendants are in good company, because most district courts to consider this issue have seen it that way as well.

But this Court sees it differently. Zimmerman alleges that he authorized the lender to take his payment on time, and that he had the money ready to be taken from his account. Thus, he is no different from someone who sends a check in the mail before its due date. If a lender loses a check after receiving it on time, that does not mean that the payment was made late. And reporting that payment as overdue creates a misleading impression of a customer's

creditworthiness. The same is true here. When someone has authorized a lender to automatically withdraw a payment and the money is available for withdrawal, it is inaccurate to report the payment as overdue just because the lender failed to process it.

**I**

The following facts, taken from Zimmerman's complaint, are accepted as true for purposes of this motion to dismiss.

In December 2018, Zimmerman entered into an installment payment contract with Bank of America for the purchase of a Ford Focus RS. Zimmerman agreed to pay $407.14 per month for 72 months. He signed up for Bank of America's AutoPay function, and every month his payments were deducted from his personal checking account. That continued for 71 months, but in December 2024—the month his final installment payment was due—Bank of America failed to process Zimmerman's payment. Bank of America did not notify Zimmerman of this error.

In January 2025, Bank of America reported to consumer reporting agencies Equifax, Experian, and Transunion that Zimmerman was thirty days delinquent on his account. Zimmerman first learned of this on February 3, 2025, when he received notice from his credit monitoring service that his account had been marked as delinquent. He promptly called Bank of America, and the agent on the phone told him that his final payment remained outstanding. Zimmerman disputed Bank of America's reporting and instructed the agent to take his payment electronically. The agent told Zimmerman that Bank of America would not do anything about the delinquent reporting and advised him to file a dispute with the consumer reporting agencies. The bank deducted the payment from Zimmerman's checking account on February 5.

On February 5, Zimmerman filed disputes with Equifax, Experian, and Transunion. Equifax and Experian responded that Bank of America had verified that the information was accurate and that the delinquency would remain on his report; Transunion responded that it had updated its reporting, but it kept the delinquency on Zimmerman's report. In July 2025, Zimmerman again submitted disputes to the three consumer reporting agencies. He included an explanation of Bank of America's failure to process his AutoPay payment, proof of his AutoPay

enrollment, and proof that he had money in his personal checking account at the time the payment was supposed to be processed. Each of the three reporting agencies responded the same way they had the first time. Zimmerman also attempted a couple more times to dispute the reporting with Bank of America but was unsuccessful.

Zimmerman filed this action in November 2025 against Bank of America and the three consumer reporting agencies. He asserts, against all defendants, violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., and the California Consumer Credit Reporting Agencies Act (CCRAA), California Civil Code § 1785.1 et seq. The three reporting agency defendants have moved to dismiss the claims against them on the grounds that Zimmerman hasn't alleged that their reporting was inaccurate within the meaning of the FCRA or CCRAA.[1]

**II**

The FRCA, which was enacted "to protect consumers from the transmission of inaccurate information about them," requires consumer reporting agencies to follow reasonable procedures to assure the accuracy of consumer information and to conduct reasonable reinvestigations into disputed information in a consumer's report. *Shaw v. Experian Information Solutions, Inc.*, 891 F.3d 749, 755-56 (9th Cir. 2018) (quoting *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 890 (9th Cir. 2010)); 15 U.S.C. §§ 1681e, 1681i. To succeed on a claim that a reporting agency has not followed reasonable procedures or conducted a reasonable reinvestigation, a plaintiff first needs to demonstrate that the disputed information in their credit report is inaccurate. *Carvalho*, 629 F.3d at 890. Information in a consumer report is inaccurate if it "either is patently incorrect or is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Shaw*, 891 F.3d at 756 (citation modified).[2]

The defendants argue that Zimmerman does not and cannot allege that his consumer

---

[1] Bank of America wisely decided not to file a motion to dismiss.
[2] Because the Ninth Circuit has interpreted the CCRAA to follow the FCRA's requirement that a plaintiff first make a showing of inaccurate reporting, the analysis in this ruling applies to both the FCRA claim and the CCRAA claim. *See Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 889-90 (9th Cir. 2010).

reports were inaccurate because he admits that his final payment was deducted from his account over thirty days late. The defendants frame Zimmerman's dispute as being not about whether his payment was late, but about whether Zimmerman or Bank of America was responsible for the late payment. They argue that Zimmerman's claim is governed by *Carvalho*, which held that reporting agencies are not obligated to resolve disputes over the legal validity of a debt. 629 F.3d at 891-92. In the defendants' view, Zimmerman is essentially asking them to decide whose fault it was that the payment was late, which *Carvalho* precludes.

But Zimmerman sufficiently alleges that his payment wasn't late and that the reporting was inaccurate. Zimmerman alleges that he authorized Bank of America to take the money from his checking account, and that he had the money available in his checking account on the day he authorized Bank of America to take it. Assuming these allegations are true, it was incorrect for the defendants to report that Zimmerman was thirty days delinquent on his payment. At a minimum, the reporting was misleading, because it created the impression that Zimmerman was less creditworthy because he made a late payment on his debt, despite the reality that Zimmerman instructed Bank of America to process his payment on time and had the money available in his account for that payment to be processed.

Imagine the following scenario: Instead of using AutoPay, Zimmerman makes his car payment by mailing a physical check to Bank of America. Bank of America loses the check but retains a record of having received it on time. At some point, it comes to Zimmerman's attention that Bank of America never deposited his check and that his payment was reported as delinquent. Or imagine a different scenario: Zimmerman calls Bank of America and instructs an agent to process his payment. The Bank has a recording of this call. But the agent forgets to process the payment, and it is reported as delinquent. In these hypotheticals, it seems obvious that Zimmerman made his payment on time, that the failure of the payment to process was simply due to an error by Bank of America, and that it was therefore misleading to report the payment as delinquent. There is no meaningful difference between setting up AutoPay to take a payment on a given date and sending a check or instructing an agent to process a payment. In each of these

4

situations, it is inaccurate to say that a person is delinquent on their payment.

The Ninth Circuit's opinion in *Carvalho* is not to the contrary. In *Carvalho*, the plaintiff contended that the reporting agencies should not have reported that she had an overdue medical debt because her insurance company was the one responsible for paying the debt. *Id.* at 882. The Ninth Circuit, siding with the reporting agencies, drew a distinction between factual and legal disputes. It held that when a dispute is legal, such as a dispute about the legal validity of a consumer's debt, the FCRA does not require consumer reporting agencies to reinvestigate it. *Id.* at 891-92. Zimmerman's dispute falls on the factual side of the line. The question of whether Zimmerman's payment was late does not require an investigation into whether he was legally obligated to pay his debt—instead, it merely requires an investigation into the facts of whether Zimmerman authorized Bank of America to deduct his payment by its due date.

The reporting agencies contend that to get to the bottom of Zimmerman's dispute, they would need to analyze the contract between Zimmerman and Bank of America to determine who was at fault for the AutoPay failure. But any contract that might have existed between Zimmerman and Bank of America is irrelevant to his dispute. Regardless of whom the contract might assign fault to, if Zimmerman made the payment on time as he alleges he did here, it would be inaccurate for his consumer report to say otherwise.

To be sure, most other district courts dealing with similar AutoPay failure cases against reporting agencies have concluded that it is not inaccurate for consumer reporting agencies to report failed AutoPay payments as overdue. *See, e.g.*, *Bohan v. Citibank, N.A. et al.*, No. 3:25-CV-01571-DMS-BLM, Dkt. No. 24 at 3 (S.D. Cal. Dec. 30, 2025); *Braun v. Trans Union LLC*, 2019 WL 13083348, at *3 (C.D. Cal. Oct. 10, 2019); *Spira v. TransUnion, LLC*, 2024 WL 2221662, at *3-4 (S.D.N.Y. May 16, 2024); *Arniella v. Trans Union, LLC*, 2022 WL 2349016, at *2-3 (S.D. Fla. June 2, 2022). The Court is unpersuaded by these cases for the reasons explained above. Moreover, those cases are at odds with other AutoPay failure cases against data furnishers—that is, creditors, like Bank of America, who report consumer information to the reporting agencies. In those cases, district courts tend to conclude that it can be inaccurate for

data furnishers to report the payments as overdue. *See, e.g.*, *Xu v. Better Mortg. Corp.*, 2025 WL 28556, at \*5 (N.D. Cal. Jan. 3, 2025); *Emanuel v. Bank of Am. Corp.*, 2024 WL 5186903, at \*2 (N.D. Ill. Dec. 20, 2024). If information is inaccurate when a data furnisher provides it, it is also inaccurate when a consumer reporting agency reports it. To the extent the caselaw suggests that the inaccuracy inquiry hinges on whether the defendant is a consumer reporting agency or a data furnisher, that can't be right.

At least one other district court decision seems to recognize this. In *Regalado v. Experian Information Solutions, Inc.*, a district court determined that the plaintiff, who alleged he had been reported late on a car loan payment because his automatic payment failed to process, sufficiently stated a claim against the reporting agencies. 2023 WL 6393222, at \*4 (D. Nev. Sept. 30, 2023). Additionally, in another case involving similar circumstances, where a plaintiff alleged that his payment was inaccurately reported as late when he timely authorized the payment over the phone but the payment was not credited on time, a district court concluded that the plaintiff sufficiently alleged an inaccuracy and that his claim was not precluded by *Carvalho*. *McCracken v. Ally Bank*, 2025 WL 2374831, at \*2-3 (C.D. Cal. July 14, 2025).

### III

Accordingly, Zimmerman has sufficiently alleged that the disputed information in his credit reports was inaccurate. The reporting agency defendants do not otherwise challenge the sufficiency of Zimmerman's FCRA and CCRAA claims against them. The motion to dismiss is therefore denied.

**IT IS SO ORDERED.**

Dated: May 26, 2026

_____

VINCE CHHABRIA
United States District Judge

6